MRS. CELETE JACKSON, (WIDOW) AND CHARLES MERWIN, *Appellants,* v. GEORGE L. JACKSON, AND MRS. NELLIE BELLE PORTER, BY S. Q. PORTER, HER HUSBAND AND NEXT FRIEND, *Appellees.*

Division B.

Opinion Filed November 16, 1925.

Petition for Rehearing denied December 9, 1925.

1. Homestead real estate owned by a husband who has a child or children living, cannot be conveyed by the husband to his wife, by the means of a deed of conveyance without consideration executed by the husband and wife to a third person, who acting merely as a conduit or intermediary, without consideration conveys or quitclaims the same homestead property to the wife.

2. The implied limitations contained in a constitution are as much a part of the organic law and are as effective as those which are expressed.

An Appeal from the Circuit Court for Putnam County; A. V. Long, Judge.

Affirmed.

*J. N. Blackwell,* for Appellants;

*Walton & Dineen,* for Appellees.

WHITFIELD, P. J.—The appeal herein was taken from a decree canceling of record two deeds of conveyance of homestead real estate, one from the owner husband and his wife to a third person, the other from the third person to the wife of the owner.

It appears that the property was owned by and was the homestead of Eugene C. Jackson, who had a wife and children; that Eugene C. Jackson, without consideration joined by his wife, Celeste Jackson, on January 21, 1922, by warranty deed attempted to convey to C. A. Merwin the homestead real estate; that on January 23, 1922, C. A. Merwin without consideration executed to Celeste Jackson, the wife of Eugene C. Jackson, a quit claim deed to the property; and that Eugene C. Jackson died January 28, 1922, while living on the premises as his homestead leaving a widow and two children.

It is not necessary to discuss the conflict of contentions as to the delivery of the deeds.

In Florida, homestead real estate owned by a husband who has a child or children living, cannot be conveyed by the husband to his wife, by the means of a deed of conveyance without consideration executed by the husband and wife to a third person, who acting merely as a conduit or intermediary, without consideration conveys or quit claims the same homestead property to the wife. Norton v. Baya, 88 Fla. 1, 102 South. Rep. 361.

The implied limitations contained in a constitution are as much a part of the organic law and are as effective as those which are expressed. State ex rel. Nuveen v. Greer, 88 Fla. 249, Text 262, 102 South. Rep. 739; Mugge v. Warner Lumber and Veneer Company, 58 Fla. 318, 50 South. Rep. 645; State ex rel. Bours v. L'Engle, 40 Fla. 392, 24 South. Rep. 539; Jackson v. State, 33 Fla. 620, 15 South. Rep. 250; Savage v. Jones, 225 U. S. 501, Text 533, 32 Sup. Ct. Rep. 715; Brown v. City of Lakeland, 61 Fla. 508, 54 South. Rep. 716; 12 C. J. 719; 6 R. C. L. 105; Wilson v. Fridenburg, 19 Fla. 461; Meech v. Meech, 37 Vt. 414, text 418.

By providing in Article X of the Constitution (sections 1, 2, 4) that "a homestead to the extent of," etc., "owned by the head of a family residing in this State * * * shall be exempt from forced sale under process of any court" with stated exceptions, and that "no judgment or decree or execution shall be a lien upon exempted property except as provided" etc., and in limiting the owner's power of alienation, the Constitution protects the family home from forced sale and from an alienation that is not in accord with the organic provisions, while the head of the family is living. By the provisions that "the exemptions provided for * * * shall inure to the widow and heirs of the party entitled to such exemption, "and that the

article shall not'' prevent the holder of a homestead from alienating his or her homestead so exempted by deed or mortgage duly executed by himself or herself, and by husband and wife if such relation exists, ''the Constitution expresses an intent to protect rights given to the children who, under the statute, are the ''heirs'' at the death of their father, the head of the family and owner of the homestead, as well as to protect rights given to the wife who became the widow, on the death of the husband and father. And with this as a purpose, the provisions expressly limiting the power of alienation are designed to protect the children who became ''heirs'' as well as to protect the widow against any attempted transfer of the homestead real estate that is not contemplated by the Constitution (Byrd v. Byrd 73 Fla. 322, 74 South. Rep. 313; Thomas v. Craft, 55 Fla. 42, 46 South. Rep. 594, 15 Ann. Cas. 1118; Murphy v. Farquhar, 39 Fla. 350, 22 South. Rep. 681, as well as by an attempted transfer or mortgage that is not jointly consented to and duly executed as is expressly required by the Constitution.

Hutchinson v. Stone, 79 Fla. 879, 84 So. 151; High v. Jasper Mfg. Co., 57 Fla. 437, 49 So. 156; Shad v. Smith, 74 Fla. 324, 76 So. 897.

The *Alienation* of the homestead real estate that is contemplated by the Constitution is not a voluntary conveyance of the legal title to one of the parties whose consent given by a duly executed deed of mortgage is made essential to the alienation. The organic provisions intended that at the death of the owner of a homestead, the homestead exemptions shall inure to the widow and heirs in the way fixed by statute, and the intent of such provision is that neither the widow nor the heirs shall be deprived of their prospective rights by a transfer of the title to the homestead except by an alienation in which the wife shall join, and the provision for such joinder does not contemplate a

direct or an indirect voluntary conveyance of the home-stead real estate to the wife.

The conclusion reached accords with prior decisions of this court. In Rawlins-v. Dade Lumber Co., 80 Fla. 398, 86 So. 334, there were no children. See Albright v. Albright, 70 Wis. 528, 36 N. W. 254, where there were no children. In Semple v. Semple, 82 Fla. 138, 89 So. 638, it was held that the property was not a homestead when the conveyance by the husband to the wife was executed. After the attempted transfer of the title to the homestead in this case there was no abandonment of the homestead as such, as there was in Murphy v. Farquhar, 39 Fla. 350, 22 So. 681. See Burkhardt v. James Walker & Son, 132 Mich. 93, 92 N. W. 778, 102 Am. St. Rep. 386; Hugnin v. Dewey, 20 Iowa 368.

The statutory provision that a husband may by deed convey real estate direct to his wife, cannot affect the intent of the organic provisions that homestead real estate may be alienated only by a deed or mortgage jointly and duly executed by the husband and wife if such relation exists, and cannot affect the organic provision that homestead exemptions "shall inure to the widow and heirs" of the owner. The children of the owner who are his statutory "heirs" have a right and interest in the homestead real estate exemptions that are secured by the Constitution, and the owner cannot transfer the property to another except by the alienation that is expressly provided for in which the wife must join. And the joint deed or mortgage of husband and wife, required by the Constitution, necessarily contemplates an alienation to others than the wife, at least where the conveyance to her is *without consideration,* and there are children to whom as heirs, together with the widow, the exemption by the express terms of the Constitution "shall inure" at the death of the owner.

It is suggested that the Constitution should not be held

to forbid a voluntary transfer of the homestead real estate by the owner to his wife, even though the owner of the homestead has children, because the owner of the homestead and his wife might have duly alienated the homestead to others than the children of the owner; or they might have abandoned the property as a homestead so that it could be disposed of as other real estate, and the children would thereby have lost their interest in their father's homestead exemptions; or the father might have survived his wife, and his children being grown and living in their homes, the homestead character of the property would be lost, because the owner would then no longer be the head of the family, though he continued to occupy the property as his home. But these or other circumstances or contingencies do not afford authority or justify a *voluntary* conveyance of the homestead to the wife. Such a conveyance, if permitted to be effective, would destroy the rights of exemption, and thereby frustrate the organic intent that the homestead exemptions "shall inure to the widow and heirs," when the homestead property is not duly alienated to others, and the homestead is impressed with the organic exemptions at the death of the owner. The right to do one thing does not justify the doing of another thing that is contrary to the intent of the Constituion.

Counter contingencies may be suggested. If the property be duly alienated to others, the father might reacquire it or might with the consideration received, acquire another homestead, or the consideration received might be beneficial to the children; or if it is abandoned as a homestead, he could reoccupy it with his wife; or acquire other property as his homestead; and, if he survives his wife, others might live with him on his homestead as members of his family, and the rights of his children in the homestead under the law would thereby be preserved. A due alienation of the homestead real estate to others for an appropriate

consideration, or an abandonment of the property as the homestead, might not be without benefit to the widow and heirs of the owner; but a *voluntary* transfer of the homestead to the wife would be without benefit to the husband's children, to whom, with the widow, the homestead would pass at the owner's death.

It may not be supposed that the husband and wife will make a *volutary* conveyance of his homestead to others when he has children.

The transaction in this case does not constitute "such an alienation of the homestead as is required by the Constitution to accomplish that result. If given effect it would operate to transfer the legal title to the homestead from the husband to the wife, stripped of its homestead status or character, thereby converting her interest therein into absolute ownership, and divest his children, who are his prospective heirs, of the interest which under the Constitution, inures to them. This is so because the homestead must be owned by the head of the family and the exemptions inure to his widow and heirs. To uphold such a transaction would be to say that form and not substance is important, and, that although the thing attempted may not be done directly, it will be sanctioned and given effect when done indirectly. See Hill v. First Nat. Bank of Marianna, 79 Fla. 391, 84 South. Rep. 190, 20 A. L. R. 270. Norton v. Baya, 88 Fla. 1, 102 South. Rep. 361, text 363; Palmer v. Palmer, 47 Fla. 200, 35 South. Rep. 983.

The opinion in Hinson v. Booth, 39 Fla. 333, 22 South. Rep. 687, had reference to *personal* property exemptions.

In Claflin v. Ambrose, 37 Fla. 78, 19 South. Rep. 628, the heirs of the homestead owner were not claiming against the conveyance of the homestead realty to the wife through a third person; and there was a claim that the wife had furnished a valuable consideration for the conveyance. While the Constitution controls homestead exemptions, it

does not regulate the inheritance of the property except as such inheritance is affected by the organic provisions restricting alienation and providing that the "exemptions" "shall inure to the widow and heirs of the party entitled to such exemption." The statutes regulate the descent of all property including that which may be subject to homestead exemptions under the Constitution. The exemptions are intended not only for the benefit of the widow, but also for the benefit of the children who as to the homestead are the owner's "heirs".

Section 3620, Revised General Statutes of 1920, provided that "whenever a person who is the head of a family residing in this State, and having his homestead therein, shall die and leave a widow surviving him, but no children, the homestead shall descend to the widow and shall not be subject to divise by last will and testament." This provision is not in conflict with Section 4, Article X of the Constitution of 1885. Thomas v. Williamson, 51 Fla. 332, 40 South. Rep. 831; Saxon v. Rawls, 51 Fla. 555, 41 South. Rep. 594; 29 C. J. 931.

As the entire homestead descends to the widow if the homestead owner leaves no children, no other "heirs" of the homestead owner have a right to challenge a conveyance duly made by the owner of the homestead real estate to his wife. See Rawlins v. Dade Lumber Company, 80 Fla. 398, 86 South. Rep. 334.

This is not a case of a conveyance of the homestead real estate to the owner's wife for an appropriate consideration that might be beneficial to the children of the owner as well as to the widow at his death.

Affirmed.

STRUM AND BROWN, J. J., concur.

WEST, C. J., AND ELLIS AND TERRELL, J. J., concur in the opinion.